**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                  Plaintiff,

v.

THOMAS WILLIAM WOOTEN,

                  Defendant.

_____/

CASE NO. 12-20040

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING DEFENDANT'S**
**MOTION TO SUPPRESS DEFENDANT'S STATEMENT**

Before the Court is a motion brought by Defendant Thomas Wooten to suppress physical evidence found during the execution of a search warrant and to suppress inculpatory statements, which he asserts were elicited through threats and inducements. (Doc. No. 18). The Court heard oral argument on May 9, 2012, and concluded that the search warrant was appropriately signed and executed and that Defendant failed to make the substantial preliminary showing necessary to warrant a Franks hearing. See Franks v. Delaware, 438 U.S. 154 (1978). Therefore, the Court denied the request to suppress physical evidence, specifically, images found during the execution of the search warrant. However, the Court did hear testimony on the issue of whether Defendant's statement was coerced. At the conclusion of the hearing, the Court denied the request to suppress statements on the ground that they were coerced. Because a new issue was raised at the hearing, the Court ordered additional briefing on whether the FBI agents elicited incriminating statements during a custodial interrogation before advising Wooten of his Miranda rights in violation of the Fifth

Amendment, see Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), and if so, what effect would such a violation have on the admissibility of the written statement Wooten gave after he waived his Miranda rights. The Court has reviewed the filings and, for the reasons that follow, denies the motion to suppress Defendant's statement.

## I. FACTUAL BACKGROUND

Thomas Wooten, is charged in an indictment with two counts of Production of Child Pornography, in violation of Title 18 U.S.C. § 2251(a), one count of Distribution of Child Pornography, in violation of Title 18 U.S.C. § 2252A(a)(2), one count of Receipt of Child Pornography, in violation of Title 18 U.S.C. § 2252A(a)(2), and one count of Possession of Child Pornography, in violation of Title 18 U.S.C. § 2252A(a)(5)(B).

The Court held an evidentiary hearing to assess the admissibility of statements Wooten made to agents of the Federal Bureau of Investigation. At the hearing, the Court heard testimony from Defendant, Special Agent Danielle Christenson, Special Agent William Fleming, and Detective Christian Cohlmeyer of the Macomb County Sheriff's Office. The Court also received exhibits offered by the Government, which include the Application for a Search warrant (Ex. A), The Advice of Rights (Ex. B), Defendant's Statement (Ex. C), Consent to Assume Online Identity (Ex. D), Consent to Search (Ex. E), and Agent Notes (Ex. F). At the conclusion of the evidentiary hearing, the matter was taken under advisement pending further review by the Court and receipt of supplemental briefing. Based upon the evidence presented, the Court makes the following findings of fact.

2

## II. FINDINGS OF FACT

On November 2, 2011, agents with the Federal Bureau of Investigation (FBI) and Macomb County Sheriff's deputies executed a federal search warrant at 21586 Dupont Drive, Macomb Township, Michigan.  Defendant resided at this address, and he was home when the search warrant was executed.

While the FBI executed the search warrant, Wooten was handcuffed and placed in the back of a patrol car.  According to the testimony, this action was taken to separate Wooten from the other adult, who remained in the house during the search because her minor child was asleep in a bedroom in the house.  (Tr. at 81).

After the FBI Agents completed their interview with the adult female, Wooten was moved from the patrol car to Fleming's car.  Both agents testified that the trigger for Wooten's arrest was the outstanding warrant, and that Wooten was not under arrest when the search of the residence began; however, Fleming, Christianson, and Wooten disagree as to when Wooten was told he was under arrest.  The testimony as to when the agents learned that Wooten had an outstanding, valid warrant for his arrest was inconsistent.  Wooten testified he was told he was under arrest when he was handcuffed by a sheriff's deputy.  (Tr. at 21, 36).  Wooten also testified that when Fleming moved him from the patrol car, Fleming stated Wooten was under arrest.  (Tr. at 165).  Christenson testified that she believed that Wooten was told he was under arrest when he was moved from the cruiser to the Agent Fleming's car, but she was not present when Wooten was told.  (Tr. at 84, 120).  Christenson further testified that she was present the entire time Wooten was in the agent's car, and Wooten was not

3

placed under arrest during that time.  (Tr. at 120).  In contrast, Fleming testified that

Wooten was not under arrest, merely detained, and that Wooten was not under arrest

when placed in Fleming's car.  (Tr. at 125).  According to Fleming, either he or

Christenson subsequently learned that Wooten had an outstanding arrest for domestic

violence and aggravated assault that took place in Macomb County, and notified

Wooten he was under arrest and transported Wooten to the FBI Macomb office.  (Tr. at

127). Fleming's notes confirm his time line.  (Ex. F. at 103).

   In addition to this dispute, the testimony as to what was covered in the

questioning that occurred while Wooten was in the agent's car is disputed.  Fleming

testified that he asked Wooten preliminary questions similar to those he asked the

adult female.  The questions covered who lived at the house, the rental situation, and

who had computer access.  (Tr. at 125, 127).  This testimony is confirmed by

Christenson.  (Tr. at 84).  In addition, they also showed Wooten images of his daughter

and asked Wooten to identify her.  Wooten testified that he was asked about the thumb

drive discovered during the search. (Tr. at 24).

   Wooten was transported to the Macomb County Resident Agency ("MCRA" or

FBI Macomb office") by the Special Agents.  Once Wooten arrived at the FBI Macomb

office, he was advised of his <u>Miranda</u> rights.  Defendant signed an "Advice of Rights"

form and agreed to answer questions without a lawyer.  (Ex. B).  Defendant answered

questions verbally, and agents also wrote out his responses, which he initialed.  (<u>See</u>

Ex. C).  Defendant's interview covered his e-mail address, his use of various

computers, how the home was equipped with internet service, and his possession of,

his viewing, his downloading, his producing, and his distributing of child pornographic images and videos.  (Ex. F).  He and he also identified some pictures of his daughter.  (Id.)  Defendant also provided a consent to assume his online identity (see Ex. D), and signed a consent to search form for his cell phone.  (Ex. E).

After considering the testimony of all of the witnesses and reviewing the exhibits, the Court finds that Wooten had been told that he was under arrest prior to or when he was transferred from the Macomb County vehicle to Agent Fleming's vehicle.  The Court further finds that Wooten answered questions while he was under arrest before he was given Miranda warnings.   Specifically, the Court finds that the FBI agents questioned Wooten about his email address, his relationship with his ex girlfriend, and his computer access.  The Court credits the testimony of the agents that they did not ask about the thumb drive.  (Tr. at 115).  Notably, Christianson credibly testified that she had no idea what was found in the home.  (Tr. at 100).  There is no dispute that the questions asked at the scene were asked to further the investigation.

## III.  ANALYSIS

The Fifth Amendment protects  a defendant from being "compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.  In light of this protection, the Supreme Court has held that law enforcement officers cannot interrogate a suspect who is in custody until they advise the suspect of his rights under the Fifth Amendment.  Miranda v. Arizona, 384 U.S. 436,478-79 (1966); see also United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998).  "Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal

trial." <u>Stansbury v. California</u>, 511 U.S. 318, 322(1994); <u>Salvo</u>, 133 F.3d at 948.

  A person may be detained while officers conduct a search of his home pursuant to a search warrant, and the detention during the execution is "substantially less intrusive" than an arrest. <u>Michigan v. Summers</u>, 452 U.S. 692, 702 (1981). Although the parties disputed whether Wooten was in custody at the scene, in resolving whether Wooten was in custody, the Court assessed the totality of the circumstances. The restraint on Wooten's freedom when he was moved to the agent's vehicle rose to the level associated with formal arrest. <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983). Moreover, for purposes of this motion, the Court finds when Defendant was moved from the cruiser to the agent's vehicle, he was told he was under arrest, and the "objective circumstances of the interrogation" support that finding. He was in the back of a law enforcement vehicle, he was being asked questions to further the investigation into child pornography, the questioning lasted a significant length of time, and although Wooten was not prevented from opening the back door, he was in the presence of two agents in a confined space. He did not possess unrestrained freedom of movement during the interview, and he was not told that he need not answer the questions. <u>See</u> <u>Stansbury</u>, 511 at 323; <u>United States v. Swanson</u>, 341 F.3d 524, 529 (6th Cir. 2003).

  Although Defendant was arrested at that point, he was not given his <u>Miranda</u> warnings. Nevertheless, it is not enough for Wooten merely to establish he was in custody, he also must establish that he was interrogated. Interrogation is defined as questioning initiated by law enforcement officials. <u>Miranda</u>, 384 U.S. at 444. When a statement is given freely and voluntarily without compelling influences it is admissible

into evidence; id. at 478, Miranda safeguards statements resulting from "express

questioning," and/or "words or actions on the part of the police that the police should

know are reasonably likely to elicit an incriminating response from the suspect."

Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980).  As to this factor, the Court finds

the questions asked and answered in the agent's car constituted interrogation.

Because the admissibility of the statements made at that time are not at issue in this

motion, Defendant has an additional burden to meet in showing that this "violation"

renders his second statement inadmissible.

In Oregon v. Elstad, 470 U.S. 298, 318 (1985), the Supreme Court addressed

whether an initial failure of law enforcement officers to administer the warnings

required by Miranda, without more, "taints" subsequent admissions made after a

suspect has been fully advised of and has waived his Miranda rights.  The Court

decided that "a suspect who has once responded to unwarned yet uncoercive

questioning is not thereby disabled from waiving his rights and confessing after he has

been given the requisite Miranda warnings."  Elstad, 470 U.S. at 309.

> If errors are made by law enforcement officers in administering the
> prophylactic Miranda procedures, they should not breed the same
> irremediable consequences as police infringement of the Fifth
> Amendment itself. It is an unwarranted extension of Miranda to hold that
> a simple failure to administer the warnings, unaccompanied by any actual
> coercion or other circumstances calculated to undermine the suspect's
> ability to exercise his free will, so taints the investigatory process that a
> subsequent voluntary and informed waiver is ineffective for some
> indeterminate period. Though Miranda requires that the unwarned
> admission must be suppressed, the admissibility of any subsequent
> statement should turn in these circumstances solely on whether it is
> knowingly and voluntarily made.

7

Id.

The Court already rejected Defendant's assertion that his statements were coerced.  Consequently, under Elstad, the confession at the police station cannot be excluded based on an earlier unwarned statement.  That does not end the Court's analysis, however, because the Supreme Court reexamined Elstad in Missouri v. Seibert, 542 U.S. 600 (2004), a case relied upon by Wooten.  In Seibert, the Supreme Court determined that the admissibility of a defendant's second statement turns on whether it is separate and distinct from the earlier statement.   In Seibert the defendant, who was arrested for murder, was interviewed at the police station for thirty to forty minutes without being advised of her Miranda rights.  After the officer obtained a confession, he gave the defendant a twenty minute break, then issued Miranda warnings, and obtained a signed waiver.  The officer admitted the he deliberately withhold Miranda warnings before the initial questioning.  Seibert, 542 U.S. at 600. The Supreme Court held that the recitation of Miranda was not "effective," given the unwarned interrogation conducted at the station house, and the systematic, exhaustive and psychologically skillful questioning.  Id. at 616. The Court observed that after the first segment was done, "little, if anything, of incriminating potential [was] left unsaid." Id.

In addition to Seibert, Wooten relies on United States v. Pacheco-Lopez, 531 F.3d 420 (6th Cir. 2008), to support his position.  In Pacheco-Lopez, the police questioned the defendant during the execution of a search warrant.  After the defendant told the officers that he lived in Mexico, not at the residence, and that he had

driven from Mexico days earlier, the officers gave the defendant <u>Miranda</u> warnings.
The officers then asked the defendant whether he or another individual present at the
time the search warrant was executed, had brought "cocaine to the residence."
<u>Pacheco-Lopez</u>, 531 F.3d at 422.  The defendant admitted he had transported the
cocaine, and he was taken into a bedroom for further questioning.  <u>Id.</u> at 423.

      The facts of the instant case are more akin to those in <u>Elstad</u>, then those relied
upon by Wooten.  In those cases, there was one continuous statement involving the
same officer, in the same place, with <u>Miranda</u> warnings interjected "in the middle" of
that one, continuous statement.  Here, the Court declines to characterize his two
statements as one continuous statement, with <u>Miranda</u> warnings given "in the middle."
Specifically, Wooten made one statement at the scene and a second statement at the
FBI Macomb office.  Before he made his second statement, Wooten was given the
opportunity to use the restroom, he was given coffee, he was offered food, he was
read his <u>Miranda</u> rights, which he freely, voluntarily, and knowingly waived.  The
second statement differed in detail and content.  It included additional information.

      In sum, the <u>Miranda</u> warnings delivered at the MCRA accomplished their
objective.  Accordingly, the Court finds no taint carries over to the subsequent
statement.  Notably, there was no coercion affiliated with the first statement.  Further,
as recognized in <u>Seibert</u> [t]he admissibility of post-warning statements [ ] continue[s] to
be governed by <u>Elstad</u>'s principles unless the deliberate two-step strategy is
employed."  <u>Seibert</u>, 542 U.S. at 603.   Accordingly, Defendant's argument that his
second statement should be suppressed as a fruit of the alleged illegal prior

9

questioning associated with the first statement, see Wong Sun v. United States, 371

U.S. 471 (1963), is unavailing.  The Elstad Court "rejected the Wong Sun fruits doctrine

for analyzing the admissibility of a subsequent warned confession following 'an initial

failure . . . to administer the warnings required by Miranda.' "  Seibert, 542 U.S. 600 at

612, n 4 (citing Elstad, 470 U.S. at 300).  In conclusion, the Court finds that the

evidence does not support the suppression of the statement given by Wooten at the

MCRA.

**IV.  CONCLUSION**

For the reasons discussed above, the motion is **DENIED.**

**IT IS SO ORDERED.**


s/Marianne O. Battani_____
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


Date:  June 29, 2012



**CERTIFICATE OF SERVICE**

Copies of this Order were mailed and/or electronically filed to counsel of record on
this date.

s/Bernadette M. Thebolt
Case Manager

10