**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS WILLIAM WOOTEN,

      Petitioner,

                                         Criminal Case No. 12-20040
v.                                    Civil Case No. 16-10725

UNITED STATES OF AMERICA,         Hon. Marianne O. Battani

      Respondent.

_____/

**OPINION AND ORDER DENYING PETITIONER'S MOTION**
**UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

**I.      INTRODUCTION**

Following a jury trial in December of 2012, Petitioner Thomas William Wooten was found guilty on six counts of producing, distributing, receiving, and possessing child pornography. For these six counts of conviction, Petitioner was sentenced to terms of imprisonment ranging from 60 to 360 months, to be served concurrently, and he also was ordered to pay restitution in the amount of $14,777.44. On appeal from his conviction, Petitioner challenged this Court's denial of one aspect of his pre-trial motion to suppress, but the Sixth Circuit affirmed this ruling in an unpublished decision. *See United States v. Wooten,* No. 13-1566, 602 F. App'x 267 (6th Cir. Feb. 25, 2015).

Through a motion brought under 28 U.S.C. § 2255, Petitioner now challenges his conviction on several grounds, and also contests the lawfulness of the Court's order of restitution. In support of this motion, Petitioner argues:

(i) that the statements he made to law enforcement officers after being advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966), should have been suppressed;

(ii) that the Government failed to prove each of the elements of his Count Two conviction for production of child pornography;

(iii) that he was deprived of his right to a fair trial when jurors allegedly observed him being escorted in handcuffs through a courthouse hallway during the trial;

(iv) that he was not permitted to call a desired witness;

(v) that the warrant to search his residence was unlawfully executed outside of daylight hours;

(vi) that his trial counsel was ill-prepared and otherwise provided deficient representation;

(vii) that the Court's order of restitution is unlawful in light of recent case law;

(viii) that the evidence taken from his cell phone was tainted by the prosecution's handling of this device; and

(ix) that the prosecution withheld exculpatory evidence from the defense. (*See* Dkt. 68, 2/29/2016 Motion to Vacate at 4-15.) Since this motion was filed, Petitioner has filed a motion to supplement his initial § 2255 petition with an additional claim for relief, as well as a motion to compel the production of a transcript of a proceeding that Petitioner characterizes as a "*Franks* hearing."

The Government has filed a response in opposition to Petitioner's § 2255 motion, and Petitioner has filed a reply in further support of his motion, along with a motion to supplement this reply brief. Having reviewed the parties' submissions and the

underlying record, the Court **GRANTS** Petitioner's motion to supplement his reply brief, but **DENIES** Petitioner's motion under 28 U.S.C. § 2255 to vacate his sentence, as well as his motions to amend his § 2255 petition and to compel discovery.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

For present purposes, the Court briefly summarizes the facts and procedural history of this case, with more detail to follow as pertinent to the issues raised in Petitioner's motions.  On January 19, 2012, Petitioner Thomas William Wooten was charged in a five-count indictment with two counts of production of child pornography and single counts of distributing, receiving, and possessing child pornography.  A November 1, 2012 superseding indictment charged Petitioner with these same five offenses, along with an additional count of distribution of child pornography.  On December 14, 2012, a jury found Petitioner guilty on all six counts charged in the first superseding indictment.

Prior to trial, the Court conducted an evidentiary hearing on Petitioner's motion to suppress (i) statements he made to law enforcement officers after he was arrested outside his home and taken to a nearby field office of the Federal Bureau of Investigation ("FBI"), and (ii) evidence recovered during the execution of a search warrant at Petitioner's residence.  At the conclusion of this May 9, 2012 hearing, the Court denied Petitioner's requests to exclude the evidence seized during the search of his home and for a *Franks* hearing to challenge the warrant authorizing this search, but ordered supplemental briefing as to the suppression of Petitioner's statements.  Following the submission of these supplemental briefs, the Court issued a June 29,

2012 opinion and order denying Petitioner's motion to suppress his statements, holding that the initial questioning of Petitioner in a police car without first advising him of his *Miranda* rights did not dictate the exclusion of the statements made by Petitioner after he was informed of these rights at the FBI field office.

At the conclusion of sentencing hearings held on April 10 and 23, 2013, Petitioner was sentenced to terms of imprisonment ranging from 60 to 360 months for his six counts of conviction, with these terms to be served concurrently.  The Court also ordered Petitioner to pay restitution in the amount of $14,777.44 to the victims of his child pornography offenses.  Petitioner appealed his conviction on the sole ground that the Court erred in admitting the statements he made at the FBI field office, but the Sixth Circuit affirmed this Court's denial of his motion to suppress these statements.  *See Wooten,* 602 F. App'x at 275.  Through the present motion brought under 28 U.S.C. § 2255, Petitioner now challenges his conviction and the Court's order of restitution on a number of grounds.

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution or federal law.  A motion brought under § 2255 must assert one of three types of challenges:  "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *United States v. Doyle,* 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States,* 268 F.3d 346, 351 (6th Cir. 2001)).

To prevail on a claim of constitutional error, the petitioner bears the burden of "demonstrat[ing] the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on" the criminal proceedings.  *Griffin v. United States,* 330 F.3d 733 736 (6th Cir. 2003).  The petitioner must prove his allegations of constitutional error by a preponderance of the evidence.  *Pough v. United States,* 442 F.3d 959, 964 (6th Cir. 2006).

Where, as here, one or more of the claims of constitutional error rest upon allegations of ineffective assistance of counsel, the petitioner must satisfy the two-part standard articulated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

The effectiveness of an attorney's performance must be evaluated from "counsel's perspective at the time," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and is the product of "sound trial strategy."  *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks and citation omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."  466 U.S. at 689, 104 S. Ct. at 2065.

In resolving a § 2255 motion, the Court need not conduct a hearing if "the motion and the files and records of the case conclusively show that the [petitioner] is entitled to

no relief."  28 U.S.C. § 2255(b); *see also Arredondo v. United States,* 178 F.3d 778, 782

(6th Cir. 1999).  "Thus, no hearing is required if the petitioner's allegations cannot be

accepted as true because they are contradicted by the record, inherently incredible, or

conclusions rather than statements of fact."  *Arredondo,* 178 F.3d at 782 (internal

quotation marks and citation omitted).  Finally, if "the judge considering the § 2255

motion also conducted the trial, the judge may rely on his or her recollections of the

trial."  178 F.3d at 782.

## IV.    ANALYSIS

As noted at the outset of this opinion, Petitioner has advanced nine challenges to

his conviction and the Court's order of restitution.  The Court addresses each of these

challenges in turn.

### A.    The Court's Denial of Petitioner's Pre-Trial Motion to Suppress

As the first ground raised in his § 2255 motion, Petitioner argues that the Court

erred in denying his motion to suppress the statements he made to law enforcement

officers after he arrived at the FBI field office and was informed of his *Miranda* rights.

As Petitioner acknowledges in his motion, this issue was previously raised in Petitioner's

direct appeal from his conviction, (*see* Motion to Vacate at 4), and the Sixth Circuit

affirmed this Court's ruling on Petitioner's motion to suppress his statements, holding

that the "district court correctly determined that no *Miranda* violation occurred in this

case," *Wooten,* 602 F. App'x at 275.  Absent "highly exceptional circumstances," which

Petitioner does not identify here, "[a] § 2255 motion may not be used to relitigate an

issue that was raised on appeal."  *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir.

1996) (internal quotation marks and citation omitted).  Accordingly, because Petitioner's

*Miranda* challenge was raised before and thoroughly addressed by the Court of Appeals, he may not pursue this claim again before this Court.

> **B. The Government's Alleged Failure to Establish Each of the Elements of the Offense Charged in Count Two**

In Count Two of the first superseding indictment, Petitioner was charged with production of child pornography in violation of 18 U.S.C. § 2251(a), and the jury found him guilty of this offense. Petitioner now challenges his conviction on this count, arguing (i) that the evidence produced by the Government at trial failed to establish that Petitioner produced the video giving rise to this charge, and (ii) that the record at trial likewise was insufficient to establish the "interstate commerce" element of this charge.

As a threshold matter, Petitioner concedes that he did not raise this challenge on direct appeal from his conviction. (*See* Motion to Vacate at 7.) In light of this procedural default, Petitioner may pursue this claim in his present § 2255 motion only if he "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 622, 118 S. Ct. 1604, 1611 (1998) (citations omitted); *see also Waucaush v. United States,* 380 F.3d 251, 254 (6th Cir. 2004). In his initial motion, Petitioner seeks to establish cause for his procedural default and resulting prejudice by explaining that the attorney appointed to represent him on appeal "didn't feel [this] issue had merit" and that he lacked access to (unspecified) court documents. (Motion to Vacate at 7.) In his reply brief, Petitioner adds that he is actually innocent of the production offense charged in Count Two. As discussed below, Petitioner has failed to establish either of these avenues around his procedural default of this challenge.

To the extent that Petitioner faults his attorney for failing to raise this Count Two challenge on direct appeal, the courts "have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review . . . will suffice" as cause to excuse a procedural default. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *see also Corral v. United States,* No. 12-1897, 562 F. App'x 399, 403 (6th Cir. April 9, 2014). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards,* 529 U.S. at 451, 120 S. Ct. at 1591. More to the point, "mere attorney error in not raising a claim on appeal does not constitute cause for a procedural default," unless this error "rise[s] to the level of ineffective assistance of counsel." *Sherman v. United States,* No. 16-6448, 2017 WL 4417854, at *2 (6th Cir. April 24, 2017); *see also Seymour v. Walker,* 224 F.3d 542, 551 (6th Cir. 2000) ("[C]ounsel need not raise every conceivable colorable claim on appeal in order to fulfill his duty to his client."). Petitioner makes only a bare bones showing on this point, asserting in conclusory fashion (i) that although this and his other claims are "supported by sound case law," his attorney nevertheless failed to pursue each of his desired claims on direct appeal, and (ii) that his appellate counsel made an insufficient effort to contact him before "fil[ing] an appeal at [the] last minute" that raised only a single issue. (Dkt. 74, Petitioner's Reply Br. at 2.) Nonetheless, the Court will assume, for present purposes, that Petitioner has demonstrated cause for his failure to challenge his Count Two conviction on direct appeal.

Turning to the question of prejudice, Petitioner's showing on this point is defeated by the lack of merit in his Count Two challenge. It appears from Petitioner's

submissions that he questions the sufficiency of the evidence as to two aspects of his Count Two conviction for production of child pornography:  (i) the element of interstate commerce as set forth in 18 U.S.C. § 2251(a), and (ii) the jury's finding that Petitioner produced the video giving rise to this offense.  Regarding the element of interstate commerce, the Government points to a stipulation, signed by Petitioner and his counsel and read to the jury, that the "images and videos that were found on [Petitioner's] cellphone[] were created or sent using materials that had been manufactured outside of the State of Michigan."  (Dkt. 60, 12/12/2012 Trial Tr. at 78.)  To be sure, Petitioner now asserts that he signed this stipulation "without the understanding of what I was stipulating to []or . . . the elements of the charge."  (Petitioner's Reply Br. at 2.)  Yet, the Government confirmed the factual basis for this stipulation through testimony that Petitioner's phone was manufactured in Korea and the SD card in the phone was made in China, (*see* Dkt. 59, 12/11/2012 Trial Tr. at 91-92), and Petitioner does not dispute this evidence.[1]  Thus, even if Petitioner's trial counsel failed to ensure that his client knowingly stipulated to the interstate commerce element of Count Two, Petitioner cannot show prejudice resulting from this allegedly uninformed stipulation.  Moreover, to the extent that Petitioner appears to contend in his supplemental reply brief that the interstate commerce element of Count Two requires a showing that he "knew the depictions of a minor [in the video] would travel through interstate or foreign commerce," (Dkt. 75, Petitioner's Motion to Supplement at 3-4), this element may also be satisfied through proof that the "visual depiction [at issue] was produced . . . using materials that

---

[1]Petitioner does, however, deny that the video found on the SD card was taken with his phone or that he produced this video.  These challenges are addressed below.

have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means," 18 U.S.C. § 2251(a), and this was established through the unrefuted testimony (and stipulation) as to the out-of-state origin of the cell phone and SD card. Accordingly, Petitioner's challenge to the interstate commerce element of his Count Two conviction lacks merit, and his appellate counsel did not provide ineffective assistance by failing to raise it on direct appeal.

Petitioner next insists, however, that the evidence at trial was insufficient to establish that he produced the video on the SD card that gave rise to the charge in Count Two of the indictment.  In support of this challenge, Petitioner points to the testimony of FBI Special Agent Matthew Zentz that nothing in the video file enabled him to say when the video was made, who made it, or whether it was made while the SD card was installed in Petitioner's cell phone as opposed to some other device.  (*See* 12/11/2012 Trial Tr. at 66, 97-99.)  Yet, Petitioner's argument on this point overlooks the considerable body of evidence from which the jury reasonably could have inferred that Petitioner produced the video at issue, including the testimony (i) that the SD card containing the video was found in Petitioner's cell phone, (*see* 12/11/2012 Trial Tr. at 64, 66), (ii) that the SD card also contained a number of photographs depicting Petitioner and his daughter, the same girl shown in the video, (*see id.* at 70-72), (iii) that some of the photos found on the SD card were duplicates of photos found on Petitioner's phone, (*see id.* at 87), (iv) that the video in question depicted "roughly a three- to four-year-old female child," identified as Petitioner's daughter, "performing oral sex on an adult male in what appears to be a bathtub," (*id.* at 70-71; *see also* 12/12/2012 Trial Tr. at 36), (v) that the bathtub shown in the video was located in the

main bathroom of Petitioner's residence, (*see* 12/11/2012 Trial Tr. at 130, 185-88), and (vi) that Petitioner's voice could be heard on the video, (*see id.* at 130-31, 191). While this record arguably does not remove all metaphysical doubt about the origin of the video found on the SD card, it provides ample support for the jury's verdict on the Count Two charge of producing child pornography, and thus would have defeated any sufficiency challenge Petitioner and his counsel might have pursued on direct appeal. It follows that Petitioner was not prejudiced by his appellate counsel's failure to advance this argument.[2]

This same reasoning defeats Petitioner's claim that he is actually innocent of the production offense charged in Count Two of the indictment. To establish actual innocence that would excuse a procedural default, Petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623, 118 S. Ct. at 1611. As already explained, the jury heard a wealth of evidence from which it reasonably could have found that Petitioner produced the video found on the SD card in his phone.[3] Consequently, Petitioner has not shown that he is actually innocent of the charge of producing the child pornography depicted in that video, and he cannot overcome the procedural default of

---

[2]Similarly, to the extent that Petitioner points to his alleged lack of access to court documents as "cause" for the procedural default of his Count Two challenge, the lack of merit in this claim precludes him from establishing the "prejudice" prong of the cause-and-prejudice standard for overcoming this procedural default.

[3]It is worth noting that under controlling Sixth Circuit precedent, Petitioner need not have personally and directly recorded the video onto the SD card in order to have "produced" it within the meaning of 18 U.S.C. § 2251(a); rather, it would also suffice if he copied the video onto this storage device at some point after it was initially recorded. *See United States v. Lively,* 852 F.3d 549, 559-60 (6th Cir. 2017).

his challenge to his conviction of the production offense charged in Count Two of the indictment.

### C.     The Jury's Alleged Observation of Petitioner in Handcuffs

As the third claim advanced in his § 2255 motion, Petitioner asserts that he was deprived of his right to a fair trial when one or more jurors allegedly observed him being escorted to the courtroom in handcuffs.  Petitioner acknowledges that he did not raise this issue on direct appeal, so he must establish cause and prejudice to excuse this procedural default.  To demonstrate cause for his default, Petitioner again asserts that his appellate counsel declined to pursue this issue for lack of merit, and that he lacked access to court documents at the time of his direct appeal.  The Court assumes, for present purposes, that Petitioner has identified sufficient cause for his procedural default, and turns to the question of prejudice.

As observed by the Government, this matter was thoroughly addressed by the Court and counsel immediately after it occurred.  Specifically, one of the law enforcement officers who was escorting Petitioner to the courtroom during the trial reported (i) that he saw jurors emerging from an elevator as Petitioner was standing nearby, (ii) that he "pushed [Petitioner] alongside the wall" to prevent him from being observed by the jurors, and (iii) that he did not know whether any of the jurors saw Petitioner.  (Dkt. 61, 12/13/2012 Trial Tr. at 67.)  The Court's case manager similarly stated that she "clearly saw [Petitioner]" as she stepped out of an elevator with some of the jurors, but she did not indicate whether any of the jurors also observed Petitioner at the time.  (*Id.*)  In addition, Petitioner himself indicated that something similar had

12

occurred "[t]wo days ago, I believe," but he could not say whether the jurors "saw me or not." (*Id.* at 68-69.)

In light of these reports, the Court summoned the jurors into the courtroom and asked "if anybody on the jury panel has seen the defendant in the hallway." (*Id.* at 70.) Only one juror answered in the affirmative, and the Court excused the remaining jurors before asking this juror "what it is that you observed." (*Id.* at 71.) The juror responded that "yesterday" as the juror "stepped out of the elevator," Petitioner emerged through a door "with security" and the juror reacted by "just mov[ing] my eyes." (*Id.*) The juror further explained that "I obviously s[aw] him coming in with escorted guards, but that's the only thing I s[aw]," and the juror denied having mentioned this incident to any other jurors. (*Id.*) The Court instructed the juror not to mention the matter any further, and emphasized to the juror that "if [Petitioner] was out in the hall or not in the hall, it has nothing to do with anything for you to decide in this case." (*Id.*)

After this juror was returned to the jury room, defense counsel stated that "my overwhelming preference is to just let matters go on, and that's my client's [preference] as well." (*Id.* at 72.) Although defense counsel expressed concern that the juror might have formed a "subconscious impression" that Petitioner was in handcuffs, he conceded that he did not "know how to ask that question without letting the cat out of the bag." (*Id.* at 72.) Counsel for the Government, in turn, observed that the juror "didn't indicate anything about handcuffs," and that Petitioner was handcuffed in a manner that made it plausible that the handcuffs would not be seen. (*Id.*) Following these observations from counsel, the Court expressed its view that "what was seen . . . had [no] impact on this particular juror," and concluded that "the matter is taken care of." (*Id.* at 73-74.)

Returning to the present motion, although Petitioner claims that the jury "saw [him] being escorted to [the] court[]room handcuffed with marshals," and that it "became common knowledge [among the jurors] that [he] was in custody," (Motion to Vacate at 8), the record does not bear this out. Rather, the record discloses that only one juror saw Petitioner being escorted by law enforcement officers, and this juror said nothing about having seen Petitioner in handcuffs, nor did the juror recount this incident to other jurors. While Petitioner contends that other jurors also observed him being escorted by marshals but "did not want to come forward" for "reasons unknown," (Petitioner's Reply Br. at 3), he offers no grounds for this speculation, nor does he suggest any basis for the Court to disbelieve the jurors who remained silent when asked by the Court to speak up if they had seen Petitioner in the hallway outside the courtroom. Similarly, to the extent that Petitioner views the account of the Court's case manager as indicating that "she was not alone in seeing me" in the custody of law enforcement officers, (*id.*), the case manager stated only that she "clearly saw [Petitioner] when [she] came out of the elevator," (12/13/2012 Trial Tr. at 67), and expressed no view (nor was she asked) about what the jurors who were with her might have witnessed during this incident. Instead, the decision was made to ask the jurors themselves. Accordingly, contrary to Petitioner's unfounded suppositions and assertions, the record reveals that only a single juror saw Petitioner being escorted by law enforcement officers on a single occasion during the trial.

Under controlling Sixth Circuit precedent, Petitioner cannot establish from this record that he was deprived of his right to a fair trial. In *United States v. Moreno,* 933 F.2d 362, 367-68 (6th Cir. 1991), for instance, the jury learned from the testimony at trial

that the defendants were in custody, and the defendants further "allege[d] that one or two of the jurors saw them wearing handcuffs and/or shackles as they were being transported by the marshals." The Sixth Circuit observed that "[e]xposure of the jury to a defendant in shackles requires a mistrial only when the exposure is so inherently prejudicial as to deny the defendant's constitutional right to a fair trial," and it pointed to a prior case that "distinguished the inherent prejudice to a defendant who is shackled while in the courtroom from a defendant who has been observed in shackles for a brief period elsewhere in the courthouse." *Moreno,* 933 F.2d at 368 (internal quotation marks and citations omitted). In addition, the court explained that a defendant is "required to show actual prejudice where the conditions under which defendants were seen were routine security measures rather than situations of unusual restraint such as shackling of defendants during trial." 933 F.2d at 368 (internal quotation marks and citations omitted). Applying these principles to the case before it, the court affirmed the district court's denial of the defendants' motions for a mistrial:

> In the instant case, defendants were inadvertently observed in shackles while being transported by the marshals and the jury learned of defendants' custodial status through trial testimony. The record fails, however, to support defendants' claims of inherent prejudice warranting mistrial. Their claims are further undermined by the district court's instruction to the jury that the custodial status of the defendants was not indicative of guilt or innocence and, therefore, should be disregarded. There is the presumption that juries will follow such curative instructions. Because defendants failed to show prejudice, we find defendants' contention that the district court abused its discretion in denying their motions for mistrial meritless.

*Moreno,* 933 F.2d at 368 (citation omitted).

Similarly, in *United States v. Waldon,* 206 F.3d 597, 606 (6th Cir. 2000), as the jury foreman and another juror were exiting the courthouse together after their first day

of deliberations, the foreman saw the defendant, Jessie Lee Waldon, being placed into a police car in shackles and handcuffs, and he "mentioned this to the other juror, who did not see it herself." The next day, after the jury announced that it had reached a verdict but before it was disclosed in court, Waldon "revealed what had happened the night before," and the court called the two jurors separately to sidebar to "ask[] for their versions of what happened." *Waldon,* 206 F.3d at 606-07. Both jurors described the incident as "brief," stated that they "had not mentioned it to any other jurors," and advised the court that "their having seen Waldon in handcuffs had [not] affected their decision in any way." 206 F.3d at 607. Under this record, the Sixth Circuit affirmed the district court's denial of Waldon's motion for a mistrial:

> In this case, only one juror actually saw Waldon in shackles, and that juror mentioned it contemporaneously to only one other juror; the two jurors spoke about it with no one else. The event occurred outside of the courtroom as part of a routine security measure, the district court properly queried both jurors regarding any potential prejudice to Waldon, and the two jurors assured the district court that their view of Waldon in handcuffs and shackles made no difference whatsoever in their decision. Under these circumstances, Waldon cannot carry his burden of showing actual prejudice. The district court did not abuse its discretion when it denied Waldon's motion for mistrial.

206 F.3d at 607-08; *see also United States v. Chipman,* 513 F.2d 1262, 1263 (6th Cir. 1975) (finding "no prejudice depriving defendant of a fair trial" where two jurors rode in an elevator with the defendant and observed him in handcuffs and in the custody of a marshal, and where one of these two jurors "stated that she had mentioned the incident to other members of the jury panel," but the district court took remedial action by excusing the juror who had told her fellow jurors and by polling the other jurors to ensure that this incident "would not influence them in rendering an impartial verdict");

16

*United States v. Crane,* 499 F.2d 1385, 1388-89 (6th Cir. 1974) (finding that the defendant "was [not] prejudiced by [his] brief encounters with jurors" in a courthouse hallway while handcuffed and chained to a co-defendant, where one of the jurors who had seen the defendant in handcuffs "specifically stated that she did not tell another juror about what she saw nor did it affect her consideration of defendant's case," and where two other jurors "could [not] recall seeing chains or handcuffs" on the defendant and "attributed no significance to th[is] fact").

Against this uniform weight of authority, Petitioner points solely to a Ninth Circuit ruling that is, in any event, wholly consistent with the above-cited Sixth Circuit precedent. In *Ghent v. Woodford,* 279 F.3d 1121, 1133 (9th Cir. 2002), jurors saw the defendant "in the hallway at the entrance to the courtroom in handcuffs and other restraints on some occasions." Nonetheless, the district court found that the defendant had "not made a showing of actual prejudice," and the Ninth Circuit agreed, holding that "[t]he jury's brief or inadvertent glimpse of a shackled defendant is not inherently or presumptively prejudicial, nor has [the defendant] made a sufficient showing of actual prejudice." *Ghent,* 279 F.3d at 1133 (internal quotation marks and citations omitted).[4]

Consequently, the record here, viewed in light of the pertinent case law, provides no support for a claim that Petitioner was deprived of his right to a fair trial by virtue of a single juror having seen him in the custody of marshals in a hallway outside the

---

[4]Petitioner also cites another Ninth Circuit decision for the proposition that "the presence of a biased juror cannot be harmless," and that this "error requires a new trial without a showing of actual prejudice." *Fields v. Woodford,* 281 F.3d 963, 972 (9th Cir. 2002). This principle is inapplicable here, however, in the absence of any tenable claim or evidence that any juror was actually biased against Petitioner.

17

courtroom. It follows that Petitioner was not prejudiced by his appellate counsel's failure to raise this due process challenge on direct appeal from Petitioner's conviction.

### D. Petitioner's Inability to Call a Witness at Trial

Petitioner next challenges his conviction as tainted by his inability to call a "key witness" at trial — namely, Danielle Moore, the mother of his child. (Motion to Vacate at 9.) Petitioner did not pursue this challenge on direct appeal, and he again attributes this procedural default to his appellate attorney's determination that the claim "had no merit" and his lack of access to court documents and his appellate counsel. (*Id.* at 10.) Although Petitioner's initial motion is silent as to the testimony this witness would have provided, let alone how this testimony might have helped his case, he states in his reply brief that Ms. Moore would have testified to her "custody battle" with Petitioner that featured "one accusation after another," and he suggests that this would have bolstered his defense by corroborating his own testimony at trial concerning (i) Ms. Moore's motive to take action against him, including allegedly arranging for the video giving rise to the Count Two production offense to be copied onto the SD card on which it was found, and (ii) the status of Ms. Moore's then-boyfriend as an alleged sex offender, as well as this boyfriend's alleged access to Petitioner's daughter, his home, and his cell phone. (Petitioner's Reply Br. at 4.)

As recognized by this and other courts, "[c]omplaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985); *see also Williams v. Stovall,* No. 06-15386, 2009 WL 1212980, at *16 (E.D. Mich. April 29, 2009). To show that his counsel provided ineffective assistance on this score, Petitioner must "overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy," *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks and citation omitted), and counsel's decision whether to call a particular witness is entitled to this presumption as "a tactical decision of the sort engaged in by defense attorneys in almost every trial," *United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir. 1987). Thus, Petitioner bears the "heavy burden" of overcoming this presumption and establishing each of the elements of his claim that his counsel performed deficiently in failing to call Ms. Moore as a witness at trial. *Lewis v. Alexander,* 11 F.3d 1349, 1352 (6th Cir. 1993).

Petitioner has failed to meet this burden here. First, it is evident from the record that the failure to call Ms. Moore as a defense witness at trial was not the product of trial counsel's oversight or lack of awareness of the testimony this witness might offer, but instead was a strategic decision made with full knowledge of the pertinent considerations and possible consequences. As observed by the Government, "Ms. Moore was a potential *prosecution* witness, not a defense witness," (Dkt. 73, Gov't Response Br. at 14 (emphasis in original)), and she was expected to identify Petitioner as the male voice heard on the video giving rise to the child pornography production offense charged in Count Two of the indictment, (*see* Dkt. 58, 12/10/2012 Trial Tr. at 138-39). Petitioner's counsel expressly acknowledged his understanding that Ms. Moore would testify adversely to his client regarding the video, and he also described the testimony he hoped to elicit from this witness on cross-examination. (*See id.* at 139-40.) Against this backdrop, when the Government indicated that it might not call Ms. Moore as a witness due to "physical issues" she was experiencing related to her pregnancy, Petitioner's counsel responded by stating that "if Ms. Moore cannot be here,

19

I'm not asking the government [to] bring her in just for my cross examination." (*Id.* at

138-39.)  This record confirms, rather than rebuts, the "presumption that, under the

circumstances," the decision not to call Ms. Moore if the Government failed to do so

"might be considered sound trial strategy," and thus "falls within the wide range of

reasonable professional assistance" that is guaranteed to Petitioner under the

Constitution.  *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks

and citation omitted); *see also United States v. Porter,* 924 F.2d 395, 397 (1st Cir. 1991)

(recognizing that a decision not to call a witness who could have incriminated the

defendant "falls well within the scope of informed professional judgment" (internal

quotation marks and citation omitted)).[5]

Even if Petitioner could establish that his counsel's performance was deficient,

he has failed to show any prejudice resulting from his counsel's alleged error.  First, "he

has offered no evidence, beyond his assertions, to prove what the content of [Ms.

Moore's] testimony would have been," and this absence of evidentiary support

precludes him from "show[ing] that he was prejudiced by [the] omission" of this

testimony.  *Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007); *see also Williams,* 2009

WL 1212980, at *17.  Moreover, the record indicates that at least a portion of Ms.

Moore's testimony would have been highly unfavorable to Petitioner, and the Sixth

---

[5]Petitioner seeks to cast doubt on the Government's claim that it could not call
Ms. Moore as a witness at trial due to difficulties arising from her pregnancy.  In
Petitioner's view, this claim is belied by the fact that Ms. Moore purportedly "was in court
the day before and the day after" she was expected to testify.  (Petitioner's Reply Br. at
4.)  The Court need not address these suspicions, however, given Petitioner's failure to
satisfy either prong of the *Strickland* standard for establishing that his trial counsel
provided ineffective assistance by declining to call Ms. Moore as a defense witness
once the Government did not offer her testimony in its case in chief.

Circuit has emphasized that a defendant cannot show prejudice from the omission of testimony that is, "at best, a double-edged sword," *Hanna v. Ishee,* 694 F.3d 596, 619 (6th Cir. 2012) (internal quotation marks, alteration, and citations omitted), or that carries a "boomerang risk" of harming the defendant more than helping him, *Tinsley v. Million,* 399 F.3d 796, 810 (6th Cir. 2005).  Indeed, as the Government observes, Petitioner's claim of prejudice seemingly rests on the highly dubious notion that although "[t]he defense was able to vilify Ms. Moore" through the testimony of Petitioner and other witnesses, and although this characterization "went unrefuted" when Ms. Moore did not testify, (Gov't Response Br. at 14-15), Petitioner's defense nonetheless would have been strengthened through the presentation of testimony from a likely hostile witness who would have incriminated Petitioner in at least one important respect, while also (at best) corroborating Petitioner's own testimony as to his custody battles and frequently adversarial relationship with this witness.  This highly speculative, if not wholly implausible, theory of prejudice fails to establish any reasonable "probability that, had [Ms. Moore] testified, the outcome of [Petitioner's] trial would have been different." *Clark,* 490 F.3d at 557.  It follows that Petitioner cannot demonstrate either cause or prejudice that would excuse his procedural default of this challenge.

### E.    The Early Morning Execution of the Warrant to Search Petitioner's Residence

As the next challenge advanced in his § 2255 motion, Petitioner argues that the warrant to search his residence was improperly executed outside of daytime hours. *See* Fed. R. Crim. P. 41(a)(2)(B) (defining "daytime" as "the hours between 6:00 a.m. and 10:00 p.m.").  In support of this claim, Petitioner points to a report from a Macomb

County deputy sheriff purportedly stating that he "proceeded to [Petitioner's residence] . . . at or around 5:30 am." (Motion to Vacate at 11.)

In response, the Government first points to the Sixth Circuit's recognition that a Fourth Amendment claim cannot be raised for the first time in a collateral proceeding under 28 U.S.C. § 2255, so long as the defendant "had an opportunity for full and fair litigation of this claim at trial and on direct appeal." *Ray v. United States,* 721 F.3d 758, 762 (6th Cir. 2013). Petitioner plainly had such an opportunity here, as he expressly challenged the warrant to search his residence on other grounds, arguing that it "was not sufficiently particularized because it did not describe his apartment as a place to be searched." (Dkt. 18, Defendant's 3/28/2012 Motion to Suppress at 1; *see also* Dkt. 32, 5/9/2012 Suppression Hearing Tr. at 15-17 (addressing and rejecting this challenge).) Having advanced this Fourth Amendment claim in a pretrial motion to suppress, Petitioner cannot now pursue a repackaged and reformulated Fourth Amendment challenge on collateral review of his conviction under § 2255.

To be sure, the Sixth Circuit has acknowledged that "the merits of a Fourth Amendment claim still must be assessed when a claim of ineffective assistance of counsel is founded on incompetent representation with respect to a Fourth Amendment issue." *Ray,* 721 F.3d at 762. Yet, as the Government points out, Petitioner "does not argue that he asked his trial attorney to raise" the issue of improper execution of the search warrant prior to 6:00 a.m., nor does he otherwise contend "that his trial attorney mismanaged the motion to suppress in any way." (Gov't Response Br. at 15.) While Petitioner seemingly suggests that the Macomb County deputy sheriff's report was not available at the time of the May 9, 2012 hearing on his pretrial motion to suppress, he

concedes that it was filed shortly thereafter, on July 2, 2012, well before the commencement of trial in December of that year. (*See* Petitioner's Reply Br. at 5.) Thus, Petitioner and his counsel could have pursued this challenge prior to or during trial, but they did not do so. And, again, Petitioner does not advance any sort of claim that his trial counsel provided ineffective assistance in his handling of this issue.

In any event, the Government correctly points to the ample evidence in the record that the warrant to search Petitioner's residence was executed no earlier than 6:00 a.m. Most notably, the two FBI agents who testified at the suppression hearing, Special Agent Danielle Christenson and Special Agent William Fleming, both stated that the search warrant was executed at or shortly after 6:00 a.m. (*See* 5/9/2012 Suppression Hearing Tr. at 80, 141.) This, in turn, was corroborated by other testimony at the suppression hearing — including Petitioner's own testimony — which established (i) that upon the arrival of law enforcement officers at Petitioner's home to execute the search warrant, Petitioner was "immediately" handcuffed and placed in the back of a police car, (*id.* at 21, 102); (ii) that he was initially detained in this police car for about 20 minutes and then moved to an FBI agent's car, where he remained for "nearly an hour," (*id.* at 67, 103, 167-68), and (iii) that at 7:20 a.m., Petitioner was transported in the FBI agent's car from his home to the FBI field office, (*id.* at 71, 73, 103, 168). Under this timeline, which Petitioner himself expressly acknowledged in his testimony at the suppression hearing, (*see id.* at 168), Petitioner was taken from his home and placed in a police car at around 6:00 a.m., was then moved to an FBI agent's car at around 6:20 a.m., and finally was driven to the FBI field office about an hour later, at 7:20 a.m. Accordingly, to the extent that Petitioner might suggest that his trial or appellate counsel

provided ineffective assistance by failing to challenge the execution of the search warrant as occurring outside of daylight hours, the lack of evidentiary support for this claim precludes Petitioner from establishing any prejudice arising from this allegedly ineffective assistance of counsel.

### F.    The Allegedly Ineffective Assistance of Petitioner's Trial Counsel

Petitioner next claims that his trial counsel was "ill prepared" for trial and "did nothing about the technic[al] aspects of the case," purportedly due to the fact that he was elected as a state court judge shortly before the December 2012 trial and thus was "push[ing]" for Petitioner's trial to conclude before he assumed his new position. (Motion to Vacate at 12.)  As the Government observes in response, Petitioner has not explained in his initial motion "which aspects of the case trial counsel handled ineffectively, nor [has] he explain[ed] how trial counsel's decisions ultimately prejudiced him."  (Gov't Response Br. at 16.)  Such "[m]erely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."  *Wogenstahl v. Mitchell,* 668 F.3d 307, 343 (6th Cir. 2012); *see also Dell v. Straub,* 194 F. Supp.2d 629, 650 (E.D. Mich. 2002).

In his initial and supplemental reply briefs, Petitioner attempts to make up for this shortcoming by identifying three specific instances of allegedly deficient performance by his trial counsel.  First, he faults trial counsel for failing to object when the Court ordered a brief recess during the May 9, 2012 suppression hearing in order to address an *ex parte* motion filed by the Government.  (*See* 5/9/2012 Suppression Hearing Tr. at 77.) Yet, it is unclear what the basis for such an objection might have been — it is not invariably improper, after all, for a party to seek *ex parte* relief or for the Court to

entertain such a request, and Petitioner fails to suggest why the Government or the Court might have acted improperly in this instance.  Although Petitioner seemingly attempts to raise an inference of impropriety of some sort by asserting that the Court denied his motion to suppress immediately after it addressed the Government's *ex parte* motion, (*see* Petitioner's Motion to Supplement at 8)*,* the record demonstrates otherwise.  In fact, the Court ruled on one aspect of Petitioner's motion — *i.e.,* his request for a *Franks* hearing — near the outset of the suppression hearing, (*see* 5/9/2012 Suppression Hearing Tr. at 15-17), well before taking up the Government's *ex parte* motion, and the remaining issues raised in Petitioner's motion to suppress were resolved in a June 29, 2012 opinion and order entered several weeks after the suppression hearing, following the parties' submission of supplemental briefs addressing these outstanding issues.  Moreover, the Court thoroughly explained the grounds for these rulings, in reliance solely on evidence and arguments presented in open court or filed on the public docket, and it also advised Petitioner and his counsel in open court about the outcome of the *ex parte* matter raised by the Government, (*see* 5/9/2012 Suppression Hearing Tr. at 77).  Accordingly, Petitioner's trial counsel did not provide ineffective assistance by failing to object to the Court's handling of this *ex parte* motion.

Next, Petitioner asserts that his trial counsel failed to properly advise him in connection with his stipulation to the "interstate commerce" element of the Count Two charge of production of child pornography.  As explained earlier, however, Petitioner cannot show that he was prejudiced as a result of his allegedly uninformed decision to enter into this stipulation.  Finally, Petitioner accuses his counsel of "entirely missing" a

25

*Miranda* violation in his preparation of a pretrial motion to suppress, but he acknowledges that this violation was "caught by" the Court during the suppression hearing, (Petitioner's Reply Br. at 6), so he cannot show that he was prejudiced as a result of his trial counsel's allegedly deficient performance on this score. Accordingly, Petitioner's claim of ineffective assistance of trial counsel lacks merit.

### G.     The Court's Allegedly Unlawful Restitution Award

As the next ground advanced in his § 2255 motion, Petitioner contends that the Court's award of over $14,000 in restitution is now "unlawful," evidently in light of some recent (but unspecified) ruling. (Motion to Vacate at 13.) Yet, in his initial motion, Petitioner utterly failed to cite any statute, case law, or other authority that might call into question the lawfulness of this award, and it is not the duty of this Court to search for authority on Petitioner's behalf.

Petitioner attempts to rectify this deficiency in his reply brief, citing the Ninth Circuit's decision in *United States v. Galan,* 804 F.3d 1287 (9th Cir. 2015), for the proposition that "possession doesn't justify restitution." (Petitioner's Reply Br. at 6.) Yet, *Galan* actually holds that "in calculating the amount of restitution to be imposed upon a defendant who was convicted of distribution or possession of child pornography, the losses . . . caused by the original abuse of the victim should be disaggregated from the losses caused by the ongoing distribution and possession of images of that original abuse, to the extent possible." 804 F.3d at 1291. Even assuming that *Galan* is an accurate statement of the law of this Circuit, and even assuming that this 2015 ruling — and the Supreme Court decision on which it relies, *Paroline v. United States,* __ U.S. __, 134 S. Ct. 1710 (2014) — is eligible for retroactive application to the restitution

26

award in this case, Petitioner fails to explain how this Court's award of restitution improperly imposes upon him any losses caused by the original abuse of the victims depicted in the images that Petitioner possessed. More importantly, Petitioner stipulated to the amounts of restitution awarded to these victims, (*see* Dkt. 64, 4/23/2013 Restitution Hearing Tr. at 4-7), and he does not claim that his agreement to these amounts was unknowing or involuntary. Accordingly, Petitioner's challenge to the Court's award of restitution lacks merit.

### H. The Government's Alleged Failure to Preserve Petitioner's Cell Phone in Its Original Condition

Next, Petitioner complains that because his cell phone was in the possession of the federal prosecutor and the FBI after it was seized, it was "tainted" and "not in [the] same condition" when its contents were introduced into evidence at trial. (Motion to Vacate at 14.) In his reply brief in further support of his § 2255 motion, Petitioner elaborates that the Government should have made a "working copy" of the contents of his cell phone before conducting any desired searches, as this purportedly would have avoided any alteration of the metadata on the phone that revealed, for example, the last date and time a given file was accessed. (Petitioner's Reply Br. at 7.) Because the Government did not take this preventative measure, Petitioner contends that the contents of his cell phone and the SD card found in this phone — including, most significantly, the video giving rise to the Count Two offense of producing child pornography — should have been excluded from the evidence at trial.

Petitioner did not raise this challenge at trial or on direct appeal, so it is procedurally defaulted. Moreover, Petitioner makes no effort to establish cause and

prejudice that would excuse this procedural default.  He does not claim, for example, that he instructed his trial or appellate counsel to pursue this matter but they refused to do so.  Nor, more importantly, does he identify any meritorious argument that counsel could have advanced against the introduction of the cell phone contents at trial.  While he suggests the theoretical possibility that the Government's inspection of the contents of his cell phone could have altered the phone's metadata in some way, he fails to cite any testimony or other evidence offered by the Government at trial that depended on this metadata, or that should have been viewed with greater suspicion in light of the Government's purported failure to preserve Petitioner's cell phone in its original condition.

To be sure, Petitioner again points to the testimony of FBI Special Agent Matthew Zentz that the video giving rise to the Count Two production offense was found in a folder outside the SD card's usual file system, and that because of this, he could not say when the video was made, who made it, or whether it was made while the SD card was installed in Petitioner's cell phone as opposed to some other device.  (*See* 12/11/2012 Trial Tr. at 66-70, 97-99.)  Yet, Petitioner's counsel thoroughly cross-examined Special Agent Zentz about the circumstances surrounding the discovery of this video file, (*see id.* at 97-101), so the jury was fully advised of Petitioner's position that he did not record or copy the video onto the SD card.  To the extent that Petitioner now suggests that the Government's allegedly improper handling of the cell phone and SD card might have altered or destroyed the metadata from which Petitioner could have cast additional doubt on the origin of the video, such rank speculation and conjecture cannot provide a basis for demonstrating the ineffective assistance of Petitioner's trial or

28

appellate counsel, nor can it support a showing that Petitioner was prejudiced as a result of this allegedly ineffective representation.

### I.        The Government's Alleged Withholding of Exculpatory Evidence

As the ninth and final challenge advanced in his initial § 2255 motion, Petitioner contends that certain photographs that were sent to an FBI laboratory for analysis were "never made available to the defense." (Motion to Vacate at 15.)  Specifically, still photos from the Count Two video and exemplar pictures of Petitioner's hand and penis were sent to the laboratory for comparison, but Petitioner claims that the defense was not given copies of these photos.  In response, the Government points out that "those very photographs were referenced and used by the defense throughout the trial in order to argue that [Petitioner] was not the male in the video." (Gov't Response Br. at 18; *see also* 12/11/2012 Trial Tr. at 196-201; 12/12/2012 Trial Tr. at 38-40; 12/13/2012 Trial Tr. at 176-77.)  In his reply brief, however, Petitioner insists that the defense was only provided with a copy of the report of the FBI's analysis of these photos and other evidence, and not copies of the underlying photos themselves.  Again, Petitioner did not raise this issue at trial or on direct appeal, so he must satisfy the cause-and-prejudice standard to overcome this procedural default.

The Court need not address the question of cause, because it is clear that Petitioner cannot establish that he suffered any prejudice resulting from the Government's alleged failure to disclose the comparison photos.  While the underlying photos were not offered as exhibits at trial, the FBI report that referred to and compared these photos was introduced into evidence, and defense counsel made considerable use of this report in his cross-examination of FBI Special Agents Fleming and

Christenson.  (*See* 12/11/2012 Trial Tr. at 196-202; 12/12/2012 Trial Tr. at 65-67.)

Defense counsel then reiterated the testimony regarding this report in his closing

argument:

> . . . [Petitioner] says at some point, . . . with regard to that video clip, it is not me.  I know that I don't have to prove my innocence, but for God's sake, there should be some way to prove that this is not me.  Take photographs of my hands, take photographs of my features, there were known photographs of his penis . . . .  These were all sent to Quantico, Virginia.  I was saying, kind of in an overly complimentary way, but it is true that the FBI laboratory in Quantico is the best laboratory in the world for the investigation of crime.  He said, . . . send it to these people and see if we can get an identification.

> Now, there are two things that are significant about that.  First of all, the report comes back and it says that no conclusion could be reached regarding the identification or elimination of the hands and penis depicted in [the video clip] as being the . . . hand of [Petitioner] and [his] penis.  It also says, in general, that due to insufficient detail — this was up on the screen, this will be an exhibit that you can have with you — it is impossible to make the comparison to clearly establish that this is [Petitioner's] hand or body parts . . . .

> . . . . So just looking at that scientific report, we have asked for a scientific report and the scientific report says we can't prove it.  Proof beyond a reasonable doubt is the standard.  The best laboratory for investigation in the world says we can't prove it.

(12/13/2012 Trial Tr. at 176-77.)  Given the testimony and argument that "the best

laboratory in the world" had analyzed and compared the video clip and exemplar photos

and had determined that it could not make a positive identification of Petitioner as the

adult male in the video, Petitioner cannot tenably assert that the presentation of the

underlying photos to the members of the jury for their own analysis and comparison

would have been more favorable to him than the FBI's findings following this agency's

expert analysis of the evidence.  Accordingly, Petitioner cannot show that he suffered

any prejudice as a result of the Government's alleged failure to provide the defense with

30

copies of the photos submitted for the FBI's analysis, much less that he was prejudiced by his counsel's failure to pursue this matter at trial or on direct appeal.

### J.    Petitioner's Additional Claim of Prosecutorial Misconduct Raised in a Motion to Amend His Initial § 2255 Submission

Apart from the nine claims raised in Petitioner's initial § 2255 motion and further explicated in his reply and supplemental reply briefs, Petitioner has more recently filed a February 13, 2017 motion in which he seeks leave under Fed. R. Civ. P. 15(a) to pursue an additional challenge to his conviction.  Specifically, Petitioner charges that the Assistant United States Attorney engaged in prosecutorial misconduct through certain allegedly "inflammatory statements" made during closing argument.  (Dkt. 77, Motion to Supplement Pleadings at 1.)  As discussed briefly below, this claim was not timely brought, and the Court therefore declines to consider it.

A motion under § 2255 seeking relief from a conviction or sentence generally must be brought within one year after "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  In this case, although Petitioner timely filed his initial § 2255 motion within this one-year limit, his motion to amend was filed almost a year after his initial submission, and well outside the statutory period of limitation. Accordingly, the additional claim Petitioner wishes to assert through this motion to amend would be time-barred unless it is deemed to "relate[] back to the date of" Petitioner's original § 2255 motion.  Fed. R. Civ. P. 15(c)(1); *see also Howard v. United States,* 533 F.3d 472, 475-76 (6th Cir. 2008) (explaining that "a Rule 15 motion will be denied where it is filed after [§ 2255's one-year] period expires unless the proposed

amendment relates back to the date of the original pleading within the meaning of Rule 15(c)[(1)]").

In *Mayle v. Felix,* 545 U.S. 644, 662, 125 S. Ct. 2562, 2573-74 (2005), the Supreme Court observed that the one-year period of limitation governing collateral challenges to a conviction or sentence would be reduced to "slim significance" if Rule 15's principle of "relation back" were broadly construed as permitting the assertion of additional claims outside the one-year limit so long as they "relate to the same trial, conviction, or sentence as a timely filed claim." Rather, in order to give effect to Congress's "installation of a tight time line for [habeas] petitions," the Court held that a newly-asserted claim "does not relate back (and thereby escape [the statutory] one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle,* 545 U.S. at 650, 664, 125 S. Ct. at 2566, 2575.[6]

Applying this standard here, the Court readily concludes that Petitioner's proposed claim of prosecutorial misconduct cannot be deemed to relate back to the filing date of Petitioner's initial § 2255 motion. In this original motion, Petitioner did not assert any claims of prosecutorial misconduct, so the claim he proposes to pursue in his motion to amend advances an entirely "new ground for relief." Moreover, this proposed claim does not share a "common core of operative facts" with any claims asserted in

---

[6]To be accurate, *Mayle* addresses the one-year statute of limitations that governs federal habeas petitions brought by state prisoners, *see* 28 U.S.C. § 2244(d)(1), and not the analogous one-year period of limitation set forth in § 2255 that applies to motions filed by federal prisoners such as Petitioner here. Nonetheless, the Sixth Circuit has recognized that the rule announced in *Mayle* applies as well to motions to amend petitions in § 2255 proceedings. *See Howard,* 533 F.3d at 476.

Petitioner's initial § 2255 motion, *Mayle,* 545 U.S. at 664, 125 S. Ct. at 2574, where none of these existing claims rest upon or otherwise implicate the prosecutor's statements in closing argument. Consequently, because Petitioner's proposed claim of prosecutorial misconduct is a "new claim[] dependent on discrete facts" separate from the facts bearing on his earlier claims, *Mayle,* 545 U.S. at 663, 125 S. Ct. at 2574, it follows that this claim does not relate back to the date of Petitioner's initial § 2255 motion, but instead was asserted for the first time after the expiration of § 2255's one-year period of limitation. Petitioner's Rule 15 motion to amend must therefore be denied.

### K. Petitioner's Motion to Compel Discovery

The final matter before the Court is Petitioner's September 19, 2016 motion to compel discovery, in which he requests a copy of the transcript of a "*Franks* hearing" allegedly conducted by the Court. (Dkt. 76, Petitioner's Motion to Compel Discovery at 2.) This request for a "*Franks* hearing" transcript is puzzling, given that the Court denied Petitioner's pretrial motion for a *Franks* hearing. (*See* 5/9/2012 Suppression Hearing Tr. at 15-17; *see also* 6/29/2012 Opinion and Order at 1.) Indeed, Petitioner himself recognizes that the Court denied his request for a *Franks* hearing. (*See* Petitioner's Motion to Compel Discovery at 1.)

Alternatively, Petitioner appears to take issue with the Court's resolution of his pretrial appeal to *Miranda* as purportedly dictating the suppression of his statements following his November 2, 2011 arrest, and he arguably is seeking a copy of a transcript — presumably, the transcript of the May 9, 2012 suppression hearing — in order to identify support for this *Miranda* challenge. If so, the Court explained earlier that this

33

challenge was fully litigated in a pretrial proceeding and on direct appeal, so that Petitioner cannot relitigate this matter in a § 2255 motion.  Accordingly, no purpose would be served by allowing Petitioner to conduct discovery in support of this claim.  It follows that Petitioner's motion to compel discovery must be denied.

## V.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Petitioner's July 18, 2016 motion to supplement his reply brief (Dkt. 75), and **DENIES** Petitioner's February 29, 2016 motion under 28 U.S.C. § 2255 to vacate his sentence (Dkt. 68).  In addition, the Court **DENIES** Petitioner's September 19, 2016 motion to compel discovery (Dkt. 76), as well as his February 13, 2017 motion to amend his initial § 2255 petition (Dkt. 77).

Finally, because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court **DENIES** a certificate of appealability as to any appeal that Petitioner might pursue from the Court's rulings in this § 2255 proceeding.

**IT IS SO ORDERED.**

Date:   July 13, 2018                                                    s/Marianne O. Battani
                                                                              MARIANNE O. BATTANI
                                                                              United States District Judge


<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 13, 2018.

                                                                              s/ Kay Doaks
                                                                              Case Manager